459 A.2d 744

**Mrs. Frances E. GUY, Appellee,**

v.

**Ruth E. LIEDERBACH, Executor of the Estate of Harry J. Liederbach, Esquire, deceased, and William E. Eimer, Esquire, and Edward D. Foy, Jr., Esquire, and Liederbach, Eimer and Foy, Attorneys-At-Law, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1982.

Decided April 29, 1983.

50

David Freeman, Thomas N. O'Neill, Jr., Philadelphia, for appellants.

Galen D. Hawk, Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice:

This case, one of first impression for us, presents the question of whether a named beneficiary of a will who is also named executrix has a cause of action against the attorney who drafted the will and directed her to witness it where the fact that she witnessed the will voided her entire legacy and her appointment as executrix. Common Pleas Court dismissed appellee's suit, relying on *Lawall v. Groman,* 180 Pa. 532, 37 A. 98 (1897), and two Federal cases [1] which found Pennsylvania to be a "strict privity" state requiring an attorney-client relationship to exist before there could be a malpractice action. Superior Court, by a divided vote, reversed the Common Pleas Court, and held that plaintiff-

---

1. *Sachs v. Levy,* 216 F.Supp. 44 (E.D.Pa.1963); *Connelly v. Wolf, Block, Schorr & Solis-Cohen,* 463 F.Supp. 914 (E.D.Pa.1978).

appellee could proceed under either a negligence or an assumpsit theory. In so holding, Superior Court sought to adopt the California rule for malpractice suits in negligence enunciated in *Lucas v. Hamm,* 56 Cal.2d 583, 364 P.2d 685, 15 Cal.Rptr. 821 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962), and to allow third party beneficiary suits in assumpsit under their interpretation of our holding in *Pennsylvania Liquor Control Board v. Rapistan, Inc.,* 472 Pa. 36, 371 A.2d 178 (1976).

While we agree with appellants that the *Lucas* standard is too broad, we nevertheless feel that a properly restricted cause of action for third party beneficiaries in accord with the principles of Restatement (Second) of Contracts § 302 (1979) is available to named legatees, such as appellee, who would otherwise have no recourse for failed legacies which result from attorney malpractice.[2]  We therefore affirm in part and reverse in part the order of Superior Court, 279 Pa.Super. 543, 421 A.2d 333, and hold that while important policies require privity (an attorney-client or analogous professional relationship, or a specific undertaking) to maintain an action in negligence for professional malpractice, a named legatee of a will may bring suit as an intended third party beneficiary of the contract between the attorney and the testator for the drafting of a will which specifically names the legatee as a recipient of all or part of the estate.  The policy reasons underlying the retention of privity and the dangers of adopting negligence concepts of duty analyzed in terms of scope of the risk or foreseeability, as set forth in *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931), remain cogent and are underscored by the experience in California after that state's courts abolished the doctrine to allow such suits in negligence. *Lucas v. Hamm, supra.*  However, the grant of standing to a narrow

---

**2.**  Our holdings in this opinion do not address the merits of appellee's claim. We are exclusively concerned with whether appellee has any cause of action against appellants and what form that action may take.  Since this case was arrested at the pleading stage, many factual issues crucial to a determination of whether malpractice occurred have never been developed.

class of third party beneficiaries seems "appropriate" under Restatement (Second) of Contracts § 302 where the intent to benefit is clear and the promisee (testator) is unable to enforce the contract.

## I

As an appellate court reviewing the sustaining of a demurrer we accept as true all well-pleaded material facts in the complaint as well as all inferences reasonably deducible therefrom. *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 299 A.2d 585 (1973). On February 24, 1957, Edward J. Kent, then a resident of Pennsylvania, retained Harry J. Liederbach, a Pennsylvania attorney, to draft a one-page "Last Will and Testament," which Liederbach did on the same day (RR–16a). The will provided that Frances E. Guy was to be the beneficiary of the residuary estate, after payment of a specific bequest of $4,500.00 to Kent's sister. Guy was also named executrix of the estate. The will was signed by Kent and, allegedly at Liederbach's direction, was witnessed by Guy and Liederbach.

On October 12, 1972, Kent died, apparently a resident of New Jersey.[3] The will was submitted to probate, and on July 11, 1973, Mrs. Guy qualified as executrix in the office of the Surrogate in Camden, New Jersey. However, on March 29, 1974, the Probate Division of Camden County Court, relying on a New Jersey statute, since repealed, invalidated the legacy to Mrs. Guy because she was a subscribing witness to the will.[4] (Mrs. Guy had previously resigned her

3. None of the pleadings allege this fact, but since Kent owned real property in New Jersey and Guy probated the will in Camden County, it seems reasonable to assume that he died a resident of New Jersey. *See* Brief for Appellants at 23, 29, where it is stated that Kent "moved to New Jersey."

4. New Jersey Statute § 3A:3–6 provided at the time:
"Effect of devisee or legatee attesting will.
No person who has attested a will shall be incompetent to testify concerning the execution thereof by reason of his being a beneficiary thereunder; but whether or not he testifies, as to him and those claiming under him, any beneficial devise, legacy, estate, interest gift or appointment of or affecting real or personal proper-

appointment as executrix because of the legal challenge to her right to inherit under the will). In all, Mrs. Guy was barred from taking the bulk of Kent's estate, her share totalling some $45,000 worth of property, including a parcel of real estate in Avalon, New Jersey.

On January 23, 1976, Mrs. Guy filed this action in Bucks County Common Pleas Court. The complaint, which consisted of one count in both trespass and assumpsit, alleged in pertinent part:

19. The actions and conduct of the defendant Liederbach in directing and advising the plaintiff to become an attesting witness to the Will of Edward J. Kent, Jr., was negligent as contrary to the ordinary and reasonable standards for duly licensed attorneys practicing within the Commonwealth of Pennsylvania.

20. The action and conduct of the defendant Liederbach in directing and advising the plaintiff to become an attesting witness to the will of Edward J. Kent, Jr. amounted to a breach of the contract between Edward J. Kent, Jr. and defendant Liederbach to which contract the plaintiff, Frances E. Guy, was a third party beneficiary.

(RR–6a). Along with the facts presented above, she alleged that when the will was drafted Liederbach knew or should have known that Kent possessed personalty and realty in Avalon, New Jersey, and that Kent's express choice was that

ty, except a charge on real property for the payment of a debt, shall be void."
New Jersey Statute § 3A:3–7 further provided:
"Attesting witness not to receive gift directly or indirectly.
No attesting witness to whom a beneficial estate, interest, gift, or appointment is given or made, which is declared void pursuant to section 3A:3–6 of this title, shall demand or take possession of, or receive any profit or benefit of or from such estate, interest, gift or appointment so given or made to him by the will, or demand, receive or accept from any person any such legacy or bequest or any satisfaction or compensation for the same, in any manner or under any color or pretense whatsoever."
In 1978, New Jersey repealed the above provisions and adopted the Uniform Probate Code which does not invalidate any will or provision thereof merely because the will was signed by an interested witness. *See* N.J.Stat.Ann. § 3A:2A–7(b). *See also In Re Estate of Janney,* 498 Pa. 398, 446 A.2d 1265 (1982).

Mrs. Guy should be the beneficiary of all his estate, save for the bequest to his sister.

Liederbach filed preliminary objections in the nature of a demurrer, alleging that the absence of any attorney-client relationship between Guy and Liederbach barred any malpractice action, that the complaint failed to state facts sufficient to establish negligence on the part of Liederbach, and that the New Jersey statutes and the Camden County Probate Court's decision based on them barred Guy's suit.

## II

Common Pleas, relying on the requirement of strict privity set out in *Lawall v. Groman, supra,* dismissed Mrs. Guy's action. 33 Bucks Co.L.Rep. 300 (1979). On appeal to the Superior Court, the case was heard by a three judge panel which voted 2–1 to reverse the order of the trial court. *Guy v. Liederbach,* 279 Pa.Super.Ct. 543, 421 A.2d 333 (1980). The Superior Court held that a beneficiary has a cause of action against the attorney who drafted the will based either on a negligence theory as articulated in *Lucas v. Hamm, supra,* which Superior Court called "the better view," or under a third party beneficiary theory, relying on their interpretation of our holding in *Pennsylvania Liquor Control Board v. Rapistan, Inc., supra.* Superior Court's holdings entail a change in the law of Pennsylvania in the areas of both attorney malpractice and third party beneficiaries, and we granted review of this case to give full consideration to these issues.[5]

**5.** Neither Common Pleas nor Superior Court dealt with appellants' claim that the New Jersey statute, now repealed, bars appellee's suit. Common Pleas did not reach the issue, finding that Mrs. Guy had no cause of action. Superior Court found the claim "without merit" 279 Pa.Super.Ct. at 553, 421 A.2d at 337 (1980). While we do not decide this issue, concerning ourselves only with the existence of a cause of action for Mrs. Guy, we note that since the suit in question involves rights (her third party rights) under a contract between an attorney and his client for legal services, the laws of the state where the contract was made (here Pennsylvania) govern. Restatement (Second) of Conflicts § 188 (1969). *See Melville v. American Home Assurance Co.,* 584 F.2d 1306 (3rd Cir.1978); *Craftmark Homes, Inc. v. Nanticoke Construction Co.,* 526 F.2d 790 (3rd Cir.1975); *Culbreth*

■ Under present Pennsylvania law, an individual who has an attorney-client relationship may sue his attorney for malpractice under either a trespass or assumpsit theory. *See* 1 *Standard Pennsylvania Practice 2d* § 4:66 and cases cited therein. In dicta, *Lawall v. Groman, supra,* relying on the principle that one who undertakes to perform a service for another, even without reward, is bound to exercise reasonable care and can be held responsible for misfeasance, though not for nonfeasance, stated that a third party could bring suit against an attorney in a negligence action if the attorney knew that the third party "was relying on him in his professional capacity." 180 Pa. at 540, 37 A. 98. Despite this language, Federal courts interpreting Pennsylvania law have held that the mere negligence of an attorney toward someone other than a client is not actionable. *Sachs v. Levy, supra; Connelly v. Wolf, Block, Schorr & Solis-Cohen, supra.* Thus we have in the past adhered to the rule followed by the overwhelming majority of states requiring the privity of an attorney-client relationship in order to maintain a cause of action. *See* Annot., 45 A.L.R.3d 1181. At the very least, *Lawall* would require a specific undertaking on the attorney's part to perform a specific service for a third party, coupled with the reliance of the third party and the attorney's knowledge of that reliance in order for the third party to bring suit.

## III

Our analysis begins with the recognition that *Lawall v. Groman,* albeit in dicta, allows for the bringing of suits by persons other than clients. In *Lawall,* a mortgagee sued an attorney for his failure to properly search records to ensure that her mortgage would be the first lien on the property.

*v. Simone,* 511 F.Supp. 906 (E.D.Pa.1981); and *Nationwide Mutual Insurance Co. v. Walter,* 290 Pa.Super.Ct. 129, 434 A.2d 164 (1981), and the analyses therein which show Pennsylvania following a flexible conflicts methodology combining interest analysis and the Restatement (Second) of Conflicts. Furthermore, New Jersey would not now apply the policy behind its repealed statute. *See* n. 4, *supra, In Re Estate of Janney, supra,* and the concurring opinion of Mr. Justice (now Chief Justice) Roberts.

The attorney's fees were paid by the mortgagor. We said while "[t]he payment of a fee is the most usual and weighty item of evidence to establish the relationship of client and attorney . . . it is by no means indispensable." 180 Pa. at 537–538, 37 A. 98. The dicta in *Lawall* were recognized by Common Pleas, which nevertheless held that appellee does not state a cause of action falling within these dicta. The reason that appellee does not reveals the core problem in this case. Appellee does not state a cause of action under the dicta in *Lawall* because she could not have an attorney specifically undertake for her the writing of a testator's will which made her the residuary beneficiary of that will. She could not rely on the attorney's professional expertise because he could not employ his expertise on her behalf in such a manner. Such a beneficiary is left without any remedy for the failed legacy. Because she is a beneficiary, she could not have had privity with the attorney, nor could any specific undertaking have been arranged between them. The intentions of the testator and the expectation of the named beneficiary are thus frustrated under the strict privity rule, despite the dicta in *Lawall.*

## IV

We therefore turn to the question of whether the estate could sue the drafting attorney for malpractice and receive damages for the failure of the instrument to effectuate testator's intent. In any cause of action for malpractice, some harm must be shown to have occurred to the person bringing suit. In the case of a failed legacy, the estate is not harmed in any way. California, the first state to find a cause of action in malpractice for beneficiaries has held that the executor has no standing to bring an action.

> Indeed, the executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan, since in the normal case the estate is not injured by such negligence except to the extent of the fees paid; only the beneficiaries suffer the real loss.

*Heyer v. Flaig,* 70 Cal.2d 223, 228, 449 P.2d 161, 165, 74 Cal.Rptr. 225, 229 (1969). Even if the estate would have standing to bring the suit, the fact that no harm had occurred to it and the estate has nothing to gain would remove any incentive for suit.

## V

If the beneficiary has a cause of action it will be either in trespass or assumpsit. Appellants have argued persuasively that the rule of *Lucas v. Hamm* which allows for suits in trespass has proved unworkable, and has led to *ad hoc* determinations and inconsistent results as the California courts have attempted to refine the broad *Lucas* rule. *Compare Ventura County Humane Society for the Prevention of Cruelty to Children and Animals, Inc. v. Holloway,* 40 Cal. App.3d 897, 115 Cal.Rptr. 464 (1974) to *Bucquet v. Livingston,* 57 Cal.App.3d 914, 129 Cal.Rptr. 514 (1976), and *Goodman v. Kennedy,* 18 Cal.3d 335, 556 P.2d 737, 134 Cal.Rptr. 375 (1976) to *Roberts v. Ball, Hunt, Hart, Brown and Baerwitz,* 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976). Particularly troublesome in any negligence action is the standard to be applied. The California courts have not adopted a simple negligence standard, but beginning with *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958) have applied a six part balancing test on a case-by-case basis.[6] Of special relevance to cases such as the present one is what the attorney "knew or should have known," a task made all the more difficult by the fact that the testator, whose intentions and estate the attorney is to have knowledge of, will not be present to testify.

■ Superior Court stated that it believed the *Lucas* test represented the "better view." *Guy v. Liederbach,* 279 Pa.Super.Ct. at 548, 421 A.2d at 335. We do not agree. Nor

6. These factors are (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of connection between defendant's conduct and plaintiff's injury; (5) the potential for preventing future harm; and (6) the moral blameworthiness of the defendant's conduct.

do we find appellee's citations to *Kassab v. Central Soya Company*, 432 Pa. 217, 246 A.2d 848 (1968) and *Salvador v. Atlantic Steel Boiler Company*, 457 Pa. 24, 319 A.2d 903 (1974), involving the abolition of vertical and horizontal privity in products liability cases, relevant here. As appellants aptly point out, "professional services are not like a mass-produced product whose design and manufacture impact equally on all ultimate users. To the contrary, professional services must be carefully crafted to meet the needs of individual clients." Brief for Appellants at 16. We find that the policy concerns expressed in *Ultramares Corp. v. Touche, supra,* and the history in California, following its abolition of the privity requirement in negligence suits arising out of agreements to furnish professional services, persuade us we should not eliminate the privity requirement in malpractice actions based on negligence. Thus we retain the requirement that plaintiff must show an attorney-client relationship or a specific undertaking by the attorney furnishing professional services, as in *Lawall,* as a necessary prerequisite for maintaining such suits in trespass on a theory of negligence.

## VI

We now consider whether appellee and those similarly situated may proceed under a third party beneficiary theory. Under current Pennsylvania law for a third party beneficiary to have standing to recover on a contract, both parties (promisor and promisee) must express an intention that the third party be a beneficiary to whom the promisor's obligation runs in the contract itself. *Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950). We went on to say:

> [I]n other words a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; * the obligation to the third

party must be created, and must affirmatively appear, in the contract itself . . .

*Id.,* 364 Pa. at 57, 70 A.2d at 830–831.   The footnote to this passage states:

It is true that a third party beneficiary may be in contemplation without being specifically or individually designated;   . . .

*Id.,* 364 Pa. 57 at n. *, 70 A.2d at 831, n. *.   Yet even an insurance policy "on account of whom it may concern" must still include that phrase, and the intent on the part of the contracting parties to benefit an as yet unnamed third party must be present in the contract.   *Id.*[7]

Under the *Spires* analysis, a beneficiary of a will would be a third party beneficiary with standing only if the testator and the attorney had a written contract to write a will, and the contract indicated the intention of both parties to benefit the legatee.   The fact that the beneficiary is named in the will is not relevant to third party status.   The will is not the contract, but rather that which is contracted for.   Furthermore, even if the naming of the legatee in the will is taken as indicating the testator's intent to benefit the legatee, it cannot be taken to indicate that the drafting attorney intended to confer any benefit.   It is not at all clear that an attorney ever intends to benefit a third party under a testator's will in the sense required in *Spires.*   Thus it is very unlikely that a beneficiary could ever bring suit under the *Spires* requirements.

We believe that Restatement (Second) of Contracts § 302 (1979) provides an analysis of third party beneficiaries which permits a properly restricted cause of action for beneficiaries such as appellee.   In adopting this standard, we act in accordance with the principles set forth in Restatement

7.   Our decision in *Pennsylvania Liquor Control Board v. Rapistan, Inc.,* 472 Pa. 36, 371 A.2d 178 (1976) did not change this rule.   While acknowledging both judicial and scholarly criticism of the narrow rule of *Spires,* we declined to adopt the Restatement (Second) of Contracts standard for determination of third party beneficiaries, though we analyzed the facts of that case in the light of Restatement (Second) § 302.

(Second) concerning third party beneficiaries which were only hypothetically employed in *Rapistan*. In so doing, we overrule *Spires* to the extent that it states the exclusive test for third party beneficiaries.

Restatement (Second) of Contracts § 302 (1979) states:

§ 302. Intended and Incidental Beneficiaries

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties *and either*

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

(Emphasis added). There is thus a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." The first part of the test sets forth a standing requirement. For any suit to be brought, the right to performance must be "appropriate to effectuate the intentions of the parties." This general condition restricts the application of the second part of the test, which defines the intended beneficiary as either a creditor beneficiary (§ 302(1)(a)) or a donee beneficiary (§ 302(1)(b)), though these terms are not themselves used by Restatement (Second). Section 302(2) defines all beneficiaries who are not intentional beneficiaries as incidental beneficiaries. The standing requirement leaves discretion with the trial court to determine whether recognition of third party beneficiary

status would be "appropriate." If the two steps of the test are met, the beneficiary is an intended beneficiary "unless otherwise agreed between promisor and promisee."

Applying these general considerations and Restatement (Second) § 302 to the case of beneficiaries under a will, the following analysis emerges. The underlying contract is that between the testator and the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee. Under Restatement (Second) § 302(1), the recognition of the "right to performance in the beneficiary" would be "appropriate to effectuate the intention of the parties" since the estate either cannot or will not bring suit. Since only named beneficiaries can bring suit, they meet the first step standing requirement of § 302.[8] Being named beneficiaries of the will, the legatees are intended, rather than incidental, beneficiaries who would be § 302(1)(b) beneficiaries for whom "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." In the case of a testator-attorney contract, the attorney is the promisor, promising to draft a will which carries out the testator's intention to benefit the legatees. The testator is the promisee, who intends that the named beneficiaries have the benefit of the attorney's promised performance. The circumstances which clearly indicate the testator's intent to benefit a named legatee are his arrangements with the attorney and the text of his will.

## VII

Appellants argue that if we are to find any cause of action, it must be in tort (trespass) rather than in contract

8. There are, of course, beneficiaries under a will who are not named, and who may be either intended or unintended beneficiaries. The standing requirement may or may not be met by non-named but intended beneficiaries: the trial court must determine whether it would be "appropriate" and whether the circumstances indicate an intent to benefit non-named beneficiaries. It follows that unintended third party beneficiaries could not bring suit under § 302 against the drafting attorney. In making that determination the trial court should be certain the intent is clear.

(assumpsit). They cite *Heyer v. Flaig, supra,* in support of this contention:

> This latter theory of recovery [third party beneficiary contractual remedy], however, is conceptually superfluous since the crux of the action must lie in tort in any case: there can be no recovery without negligence.

70 Cal.2d 223, 227, 449 P.2d 161, 164, 74 Cal.Rptr. 225, 228 (1969). This analysis is based on a common confusion of negligence doctrines relating to standard of care with those relating to scope of the risk, i.e., the class of persons to whom a duty is owed, analyzed in negligence in terms of foreseeability. Thus, although a plaintiff on a third party beneficiary theory in contract may in some cases have to show a deviation from the standard of care, as in negligence, to establish breach, the class of persons to whom the defendant may be liable is restricted by principles of contract law, not negligence principles relating to foreseeability or scope of the risk.

Appellants also cite *Duke & Co. v. Anderson,* 275 Pa.Super.Ct. 65, 418 A.2d 613 (1980), which held that a trespass standard of damages applies in legal malpractice cases, even if the complaint is in assumpsit. The short answer to this argument is that on the facts of this case the measure of appellee's damages is her loss of expectancy. It would be inappropriate for us to range afield in an effort to determine whether damages in other cases should be governed by tort principles of proximate cause, substantial factor of foreseeability, or by contract principles precluding an award of "consequential" damages if, indeed, they differ. Suffice it to say that the causes of action in trespass and assumpsit are distinct, and cases such as appellee's who is a third party beneficiary, sound in assumpsit, and involve considerations more restrictive than trespass.

Overarching all of appellants' arguments is the basic policy argument that allowing suits such as appellee's would perhaps lower the quality of legal services rendered to clients because of attorneys' increased concern over liability to third persons, and certainly make them much more expen-

sive. *See Ultramares Corp. v. Touche, supra.* We cannot accept the proposition that insuring the quality of legal services requires allowing as limited a number of persons as possible to bring suit for malpractice. However, we are not insensitive to the policy concerns raised by appellants, and accordingly refuse to adopt the "California rule" allowing actions in negligence or contract actions which in fact rely on negligence criteria. Nevertheless, we feel persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to properly draft the instrument should not be left without recourse or remedy as they would if appellants' argument were wholly adopted. We believe that a cause of action in assumpsit in accord with the principles of Restatement (Second) of Contracts § 302 (1979) meets the legitimate needs of appellee and those like her, while still addressing the legitimate concerns voiced by appellants.

The order of Superior Court is affirmed in part and reversed in part, and this case is remanded to the Court of Common Pleas of Bucks County for further proceedings in accordance with this opinion.

O'BRIEN, Former C.J., did not participate in the decision of this case.

NIX, J., joins this opinion and files a concurring opinion.

LARSEN, J., files a concurring and dissenting opinion.

ROBERTS, C.J., files a dissenting opinion.

McDERMOTT, J., files a dissenting opinion.

NIX, Justice, concurring.

I agree and join in the opinion of the majority. I think further comment is required because of the dissent of Chief Justice Roberts. I concede that it is difficult conceptually to find a contract cause of action and at the same time to reject the trespass claim. I do, however, accept the legitimacy of the policy arguments set forth in the majority opinion for restricting recovery under a theory of malpractice. The use of what I believe to be an appropriate application of the third party beneficiary concept, in view of

its recent development, Restatement (2nd) of Contracts § 302 (1981); *see,* Introductory Note to Chapter 14 and Reporter's Note to § 302, Restatement (2nd) of Contracts (1981),[1] in this instance is justified even though the general trespass claim is not permitted. It would be unconscionable to permit admitted actionable conduct to be insulated by the fortuitous death of the person recognized in the law to have standing to prosecute such a claim, where the brunt of the injury from such conduct is born by a living party.[2]

It is for this reason that I believe the majority opinion expresses the preferable view to be followed in this matter.

LARSEN, Justice, concurring and dissenting.

I join Mr. Justice Hutchinson's reasoning and disposition of the contract recovery theory. I also join Mr. Justice McDermott's reasoning and proposed disposition under the tort theory.

ROBERTS, Chief Justice, dissenting.

Although I agree with the majority that appellee's complaint fails to state a cause of action in trespass, I do not agree that appellee has a cognizable cause of action in assumpsit. Hence I dissent.

Appellee's complaint alleges that, "in exchange for valuable consideration," appellant agreed with decedent Kent that appellant would draft a will naming appellee as the executrix and the residuary beneficiary of decedent's estate. Such a will was prepared by appellant and executed by

1. Recent resolution of the doctrinal difficulties historically present in the rights of contract beneficiaries by a shift of emphasis from "duty" to "intention" calls for a relaxation of the strict rule of *Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950).

2. I do not accept the implicit suggestion of the Chief Justice that there was no claim by the decedent in view of the ambulatory nature of a testamentary document prior to the death of the testator. The contract upon which the obligation arises required the scrivener to fulfill the intention of the testator expressed to him at the time of the drafting. The fact that the testator could subsequently change the proposed testamentary disposition is of no moment. The scrivener's obligation was to provide that which he undertook to do and the failure to do so constituted the breach which justified the recovery.

decedent on February 24, 1957. Kent died on October 12, 1972. On March 29, 1974, a New Jersey probate court upheld a challenge to the proposed distribution of real property to appellee on the ground that appellee had signed the will as an attesting witness. See N.J.Stat.Ann. §§ 3A:3–6 & 3A:3–7. The present action was commenced on January 23, 1976, nineteen years after the execution of the will, and more than three years after the death of decedent. Appellee died in December of 1978, and the present action is being pursued by the executor of her estate.

The majority concludes that appellee had a right, as an intended "third-party beneficiary," to insist on the fulfillment of "the intent of the testator to benefit the legatee." This conclusion, however, ignores the fact that appellee could not have placed justifiable reliance upon the testamentary wishes of decedent either before or after his death, a critical factor under third-party beneficiary law. See Restatement (Second) of Contracts § 311(3) (1981). At no time during decedent Kent's life could appellee have bound decedent to the wishes expressed in his 1957 will. As decedent was under no contractual obligation to make a will which named appellee as a beneficiary, decedent was thus free to change his testamentary intent until the day he died. See, e.g., *Imbruglia Estate,* 479 Pa. 95, 387 A.2d 851 (1978). Even at decedent's death appellee was in no position to rely on a will naming her as beneficiary, for appellee could have no valid claim to decedent's estate until the completion of probate proceedings. Once the bequest was deemed invalid, appellee could have at most hoped for relief on an appeal, an option which she did not pursue.

Even more important, the majority's conclusion ignores the fact that, under third-party beneficiary law, the issue is not the fulfillment of the "intent of the testator"; rather, it is the enforceability, by a third party, of the intent of the parties to the contract. See Restatement (Second) of Contracts, supra, at § 302(1). Here, the record is clear that appellant and decedent did *not* intend that appellant would render services to appellee; the sole promise which appellant

made to decedent was to write decedent's will, a promise which appellant performed.

Although appellant fairly may be charged with having impliedly promised decedent that the execution of the will would be conducted in a manner that would not result in the nullification of the bequest to appellee, decedent's relief for a breach of such a promise would have been either a new, properly executed will or the cost of having such a will prepared. Moreover, decedent would have been obliged to seek relief within four or six years of the execution of the will, depending upon whether the contract was oral or written. See 42 Pa.C.S. §§ 5523(3) & 5527(2). Clearly decedent could not have claimed that relief could be sought by his estate after his death, fifteen years after the execution of the will. Nor, of course, could decedent's estate have claimed that it was in any respect entitled to the value of the failed bequest.

Appellee's demand for far greater relief than that which would have been available to decedent makes it clear that what appellee is seeking to enforce is, in fact, not a promise made between appellant and decedent under the law of contracts, but rather an alleged duty owed by appellant directly to appellee under the law of torts. Having properly refused to recognize such a duty in a cause of action in trespass, the majority has offered no logical basis for its imposition of a similar duty as a purported application of third-party beneficiary law.

The order of the Superior Court should be reversed and the order of the Court of Common Pleas of Bucks County dismissing appellee's complaint reinstated.

McDERMOTT, Justice, dissenting.

A third party beneficiary is one intended to be benefited by an exchange of promises between a promisor and promisee. It is a journey into artifice to say, that an attorney scrivener of a will makes any promise to benefit a legatee of the will he writes for another.

The majority, anxious to formulate apotropaic remedies for future ills, has transcended the explicit issue of the

instant case. Instead of addressing the question of a lawyer's duty to a known, designated legatee of a will, who has acted in reliance on the attorney's advice, and prescribing a remedy for the negligent performance thereof, they are off defending the rapidly eroding doctrine of privity.

Recent commentary[1] and case law from other jurisdictions, clearly indicate that the continued existence of privity as a defense to an action in negligence is on very thin ice. This is particularly true in the case of a legatee who has been deprived of taking under a negligently drafted will. *See Fickett v. Superior Court,* 27 Ariz.App. 793, 558 P.2d 988 (1976); *McAbee v. Edwards,* 340 So.2d 1167 (Fla.Dist.Ct. App.1976); *Licata v. Spector,* 26 Conn.Sup. 378, 225 A.2d 28 (1966); *Lucas v. Hamm,* 56 Cal.2d 583, 364 P.2d 685, 15 Cal.Rptr. 821; *Ross v. Caunters,* (1980) 2 Q.B. 297, (1979) 3 W.L.R. 605 (1979) 3 All.E.R. 580. *See also,* Malen and Levitt, *Legal Malpractice,* § 79 at 153, (West Publishing Co.1981).

Indeed this Court in the seminal case of *Lawall v. Groman,* 180 Pa. 532, 37 A. 98 (1897) refused to apply the privity doctrine where to do so would immunize an attorney from a clear breach of duty to a known third party.

In *Lawall* the plaintiff had lent money to a borrower in return for a mortgage note. The plaintiff had been advised by the borrower's attorney that she would hold a first lien as a security for the loan. She later discovered that rather than a first lien, she received a third lien which was essentially worthless. There was no evidence that the borrowers' attorney acted wrongfully but clearly he had acted negligently in that he had failed to check the lien dockets. This

---

1. See e.g. Probert, Hendricks, *Lawyer Malpractice: Duty Relationship Beyond Contract,* 55 Notre Dame Law 708 (1980); *Legal Malpractice in Estate Planning—Perilous Times Ahead for the Practitioner,* 67 Iowa L.Rev. 629 (May 1982); Note, *Attorneys Negligence and Third Parties,* 57 N.Y.U.L.Rev. 126 (April 1982); *Attorney Negligence in Title Examinations and Will Drafting: Elimination of the Privity Requirement as a Bar to Recovery by Foreseeable Third Parties,* 17 New Eng.L.Rev. 955 (1981–82). *See also,* Note, *Guy v. Liederbach: Expanding the Attorneys' Duties Beyond the Limits of the Privity Requirement,* 11 Cap.U.L.Rev. 643 (Spring 1982).

negligence was compounded by the fact that the attorney had repeatedly assured the plaintiff that he had done so, and that she had clearly relied on his assurances in deciding to lend the money. Although plaintiff testified that she had never hired the defendant as her attorney, the court found that the attorney was acting to some extent on behalf of the plaintiff.

The *Lawall* Court held that the grant of a nonsuit based on the mere form of the relationship was improper; and that: "[I]ndependent of the relation of attorney and client, . . . [if] defendant, knowing that plaintiff was relying on him in his professional capacity . . ., undertook to perform [a] duty, he was bound to do it with ordinary skill and care in his profession, and [he] would be liable for negligence in that respect." *Id.* 180 Pa. at 540, 37 A. at 99.

This case presents an opportunity for this Court to establish a rule of sound principle and ample precedent, to wit: that where through the negligence of a lawyer scrivener of a will, a known designated beneficiary loses a legacy, the lawyer must answer in damages. Such a rule would obviate the need for employing a legal fiction, such as the majority's reliance on third party beneficiary theory and, contrary to the fear of the majority, requires no factitious formulae. The formula is simple: a duty breached is a tort, and the remedy exists in an action in trespass.

Finally, I find it somewhat anomalous that the majority has embraced the policy concerns expressed in *Ultramares v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), since the Court of Appeals of New York has held that those policies are inapplicable where the negligence of a professional is directed to a "known" third party. *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977). In fact, New York courts have recently demonstrated a willingness to adopt a more modern approach. *See Baer v. Broder*, 106 Misc.2d 929, 436 N.Y.S.2d 693 (1981), aff'd. *on other grounds* 86 App.Div.2d 881, 447 N.Y.S.2d 538 (1982); *Schwartz v. Greenfield, Stein and Weisinger*, 90 Misc.2d 882, 396 N.Y.S.2d 582 (1977).

I agree with the Superior Court.