## Altoona City Authority v. L. Robert Kimball & Associates

*David G. Ries,* for plaintiff.

*G. William Myers Jr.,* for defendant L. Robert Kimball & Associates.

*Matthew J. Siembieda,* for defendant Penn Central Corporation.

*Eric N. Anderson,* for defendant City of Altoona.

CARPENTER, *J.,* May 26, 1995—Before the court is a motion for summary judgment, filed by the defendant, L. Robert Kimball and Associates. The Altoona City Authority commenced this litigation by writ on July 29, 1993. Its complaint seeks economic damages as a result of the alleged general negligence and alleged professional negligence of LRK, arising out of two separate contracts between LRK and the engineering firm of Gwin, Dobson and Foreman Inc. The city authority previously contracted with GDF to provide certain services with regard to the design of the city authority's improved Easterly Sewage Treatment Plant. In its complaint, the city authority alleges it is a third party beneficiary of the two contracts between GDF and LRK. This privity is essential to maintain a cause of action for economic damages. Accordingly, the issue before this court is whether the city authority has raised any question of fact which requires resolution to determine its entitlement to third party beneficiary status. If they have not, we should grant LRK's motion for summary

judgment. Oral argument having occurred and the last of the briefs being received on February 15, 1995, the matter is ripe for disposition.

## FACTUAL BACKGROUND

Pursuant to a consent decree with the Pennsylvania Department of Environmental Resources and the United States Environmental Protection Agency, the Altoona City Authority agreed to renovate and improve its Easterly Sewage Treatment Plant. (Complaint, paragraph 5.) The authority hired Gwin, Dobson and Foreman Inc. to be a prime engineering contractor on the design phase of the project. On August 30, 1985, the authority entered into a written supplemental engineering agreement with GDF. The supplemental agreement specified that GDF would be responsible for submitting a geotechnical report detailing the findings of the subsurface investigations. (Article III supplemental agreement.) Pursuant to the supplemental agreement, GDF invited companies to bid as subcontractors to provide the subsurface investigation services.

GDF and LRK eventually entered into two subcontracts. The October 18, 1985 subcontract, 1985 agreement, provided in pertinent part that LRK was to prepare a geotechnical report and oversee the test boring programs for the ESTP site. Under the September 14, 1986 subcontract, test boring agreement, LRK agreed to perform the test boring programs at the ESTP. During September of 1986, LRK actually did conduct the test borings at the ESTP. In the report for test boring no. 4, LRK found "ashes" in the soil. Subsequently, LRK prepared a geotechnical report for the ESTP which did not report on the possible presence of hazardous waste. Construction of the ESTP renovations and upgrades started in the summer of 1989. In August of 1989 the contractor uncovered concealed underground waste pits which contained hazardous waste. As a result, the DER

conducted a response action at the ESTP site. Construction activities were interrupted by DER's response action from August 1989 until January 1991. The authority avers it has incurred costs of approximately $5,755,729 due to the delay in construction activities.

To that end, the authority commenced this breach of contract action against LRK seeking to recover these delay damages. The authority alleges that LRK owed it a duty to look for and find the hazardous waste in advance of the construction activities. The authority contends that it is a third party beneficiary of the two subcontracts between GDF and LRK.

## DISCUSSION

Preliminarily, we note the legal principles governing our analysis of a motion for summary judgment. A motion for summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b); *Fletcher v. Raymond Corp.,* 424 Pa. Super. 605, 623 A.2d 845 (1993). When considering a motion for summary judgment, we must examine the record in the light most favorable to the non-moving party accepting as true all well pled facts in the non-moving party's pleadings and giving that party the benefit of all reasonable inferences drawn therefrom. *Kelly by Kelly v. Ickes,* 427 Pa. Super. 542, 629 A.2d 1002 (1993). Summary judgment may be entered only if the case is clear and free from all doubt. *Hayward v. Medical Center,* 530 Pa. 320, 608 A.2d 1040 (1992).

Having stated the standard, we now address LRK's contention that the authority is not entitled to status as a third party beneficiary to either of the subcontracts between GDF and LRK. That is significant because without third party beneficiary status LRK contends (and we agree) that the authority cannot maintain a

cause of action against LRK. Again, the applicable law requires our review.

In that regard, we note at the outset that a cause of action based on third party beneficiary status has historically been one with narrow application. In 1950, the Pennsylvania Supreme Court held that to enjoy third party beneficiary status the contracting party's intention to benefit the third party has to be affirmatively expressed in the contract itself. *Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950) (plurality opinion). On this fundamental point, third party beneficiary law remained generally unchanged until 1983.

In 1983, the Pennsylvania Supreme Court in *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983) for the first time adopted the Restatement (Second) of Contracts §302 as an accepted test for determining third party beneficiary status. In *Guy,* the court was faced with the question of whether a named beneficiary of a will who was also the named executrix had a cause of action against the attorney who had allegedly failed to properly draft the will. Even though the contract between the drafting attorney and the decedent did not affirmatively create third party beneficiary status in the plaintiff, the Pennsylvania Supreme Court nevertheless permitted Mrs. Guy to bring suit as a third party beneficiary. In so holding, the court adopted the Restatement (Second) of Contracts §302.

Restatement (Second) of Contracts §302 (1979) states:

"Section 302. Intended and incidental beneficiaries

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

"(a) The performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

"(b) The circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

Significantly, before reaching the actual test, the party asserting third party beneficiary status must meet what we term the threshold requirement set forth at the beginning of paragraph 1 of section 302. That is, if it was "otherwise agreed between promisor and promisee," third party beneficiary status cannot be afforded.

Assuming that a party meets the threshold requirement, the court will then analyze the following two-part test:

"(1) The recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties,' and (2) the performance must 'satisfy an obligation of the promisee to pay money to the beneficiary' or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' " *Guy, supra* at 60, 459 A.2d at 751.

In terms of its philosophy in adopting section 302 of the Restatement (Second) of Contracts, the court made it clear that it was creating a narrow cause of action in *Guy*. In its opinion the court writes, "We believe that Restatement (Second) of Contracts §302 (1979) provides an analysis of third party beneficiaries which permits a *properly restricted* cause of action for beneficiaries such as appellee." *Id.* at 59, 459 A.2d at 751. (emphasis added) The court then went on to specifically opine that "the grant of standing to a *narrow class of third party beneficiaries* seems 'appropriate' under Restatement (Second) of Contracts §302 where the *intent to benefit is clear and the promisee (testator) is unable to enforce the contracts."* *Id.* at 51-52, 459 A.2d at 747. (emphasis added)

Though the test announced in *Guy* is a stringent one, the Supreme Court has ruled that it was not to be limited solely to the facts in *Guy.* In *Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147 (1992), the court stated:

"[T]his court never limited its holding in *Guy* to the facts of the case; rather, what this court said in *Guy* was that 'We believe that Restatement (Second) of Contracts §302 (1979) provides an analysis of third party beneficiaries which permits a properly restricted cause of action for beneficiaries such as appellee. In adopting this standard, . . .' . . . It is clear from the language of the opinion in *Guy* that this court was adopting the Restatement (Second) of Contracts §302 (1979) as the law of Pennsylvania. Nothing in the holding of *Guy* precludes appellees from being included in the narrow class of third party beneficiaries envisioned by this court, if they show that they meet the requirements of section 302." *Id.* at 372, 609 A.2d at 150. (citation omitted)

In *Scarpitti,* purchasers of lots in a residential subdivision brought suit against the plan's architect alleging that he arbitrarily enforced the subdivision restrictions. The purchasers of the lots alleged that they were third party beneficiaries of the implied contract between the architect and the subdivision developer. Due to a restriction in the subdivision terms, the subdivision developer was shielded from liability. The Supreme Court walked through the section 302 analysis and agreed with the landowners. The court held that the circumstances were compelling enough to afford the landowners third party benefit status at least in part because otherwise they had no recourse.

In its holding, however, the court was careful to again retain the *Spires* test as the dominant rule in Pennsylvania for designation of a party as a third party beneficiary. Specifically, the court held:

"Accordingly, we hold that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *Spires, supra, unless,* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Guy, supra.*" *Scarpitti* at 372-73, 609 A.2d at 150-51. (emphasis in original)

From the language in *Scarpitti,* it is clear that the Restatement (Second) of Contracts §302 analysis is an exception to the *Spires* test. Therefore, in analyzing a third party beneficiary claim, we must first look to *Spires.*

The *Spires* test, however, poses no problem in the case before the court. Both parties agree that neither of the subcontracts between GDF and LRK expressly indicate that third party beneficiary status should be conferred upon the authority. Thus, the authority does not meet the *Spires* test for third party beneficiary status.

Therefore, if third party beneficiary status exists in this case it must be under the guise of the Restatement (Second) of Contracts test. In addressing this issue, counsel for LRK argues in the alternative. First, at pages 3-4 of his reply brief of November 28, 1994, counsel argues that to date the Restatement (Second) of Contracts §302 has been applied only to those unique situations where a failure to use the Restatement's (Second) of Contracts "alternate test" either would leave a "third party beneficiary" without recourse or for some other compelling reason. We essentially agree with this analysis by counsel. This case contains no compelling circumstances such as were set forth in either the *Guy*

or *Scarpitti* cases in terms of an exercise of this court's discretion.

However, even were we inclined to broaden the application of section 302 to situations where a potential beneficiary *is able to enforce the contract* (which we believe to be the situation before the court) we again concur with plaintiff's counsel that the test is not met. To prove that, we need only apply the Restatement (Second) of Contracts test to each contract in turn.

### 1985 Agreement

The 1985 agreement cannot meet the test of section 302 since it cannot meet the threshold requirement which permits the court to consider section 302 only where there is no "agreement otherwise" between promisor and promisee. In the 1985 agreement, there is a clear indication from the language contained in the agreement that the parties intended to create no third party beneficiary rights. Article 35 of the October 18, 1985, subcontract between GDF and Kimball specifically states "nothing herein shall be construed to give any rights or benefits hereunder to anyone other than ENGINEER, GDF, and ASSOCIATE ENGINEER, Kimball." It is very clear from this language that the city authority was not and could not be an intended beneficiary given the parties' express agreement to the contrary. We believe that this is established as a matter of law.

### 1986 Test Boring Agreement

Similarly, with respect to the 1986 test boring agreement we find ourselves essentially in agreement with the position taken by LRK in page 6 of its reply brief of November 28, 1994, and again in its supplemental brief of February 14, 1995. Specifically, plaintiff clearly cannot establish that giving plaintiff the right to proceed as a third party beneficiary is appropriate to effectuate

the intentions of the parties. As LRK rightly argues it is not appropriate because LRK's performance did not satisfy or release GDF from any of its contractual obligations to the city authority. In fact, just the opposite was the case so that the intention of the parties is clearly contra. This is fully set forth in article 32 of the prime contract between the city authority and GDF as follows:

"The performance of work through sub agreement shall not release engineer (GDF) of any of his responsibility in regard to the covenants and agreements set forth in this supplemental agreement."(City Authority-GDF Prime Contract Article 32.)

We believe that to delay or deny the award of summary judgment presently would serve no purpose. The language of the agreements is clear. Moreover, were we to fail to grant summary judgment we would have taken what has been repeatedly described as a "narrow" application of Restatement (Second) of Contracts §302 and created open season on all owner/contractor/subcontractor situations. In the case before the court, the owner, Altoona City Authority, clearly has legal recourse against the prime contractor, Gwin, Dobson and Foreman and, in fact, that was what was clearly intended. Plaintiffs cite no provision of the agreement which renders any other conclusion possible nor do they cite any compelling reason to apply section 302. What they seek is a further broadening of the application of Restatement (Second) of Contracts §302 to fit their particular situation. However, the factual situation which we determine exists in this case is very much that of a typical construction contract with an owner, general contractor, and subcontractor. This appears to us to be a situation to which Pennsylvania courts have never applied Restatement (Second) of Contracts §302 analysis.

While not dispositive as a statement of Pennsylvania law, the case of *Pierce Associates Inc. v. Nemours Foun-*

*dation,* 865 F.2d 530, *cert. denied,* 492 U.S. 907 (1988), demonstrates many of the concerns we have were we to permit this case to go forward as a valid third party beneficiary claim.

*Pierce* involved an owner of a hospital which was the subject of a construction contract and the general contractor, asserting claims against the mechanical work subcontractor. The third circuit held that under Delaware law, the owner of the hospital was not a third party beneficiary of the subcontract between the general contractor and the mechanical work subcontractor. Both the general contract and the subcontract contained a provision that nothing contained in the contract documents would create any contractual relationship between the owner and any subcontractor. Moreover, the fact that the owner ultimately benefited from the performance of the subcontract did not create a third party beneficiary relationship. *Pierce, supra,* 865 F.2d at 535-39.

Perhaps more important than the holding in *Pierce* is the reasoning the court used to arrive at its decision. The court recited general principles of contract law during a lengthy discussion of the rules in a construction, general contractor, subcontractor situation. The court stated: "the typical owner is insulated from the subcontractors both during the course of construction and during the pursuit of remedies in the event of a default. Conversely, the subcontractors are insulated from the owner. The owner deals with and, if necessary, sues the general contractor, and the general contractor deals with and, if necessary, sues the subcontractors." *Id.* at 535-36. Moreover, the court cites Professor Corbin for the proposition that in absence of clear intent to the contrary, the typical owner has no right against the subcontractors. *Id.* at 536 (citing Corbin on Contracts §779(d) (1951 ed.) (at 46, 47)); see also, Restatement (Second) of Contracts §302, example no. 19 (p. 444).

We ask ourselves whether or not the circumstances in this case are so compelling that we should find that the Restatement (Second) of Contracts §302 test is met here and depart from the time-honored precedent that owners generally have no rights against subcontractors. We find ourselves constrained not to do so.

In the case of the 1985 agreement, the authority continually argues that the circumstances indicate that LRK knew that it was performing services on the authority's property and for the authority's benefit. This is undoubtedly true. However, that in itself does not create a material issue of fact. As Judge Cudahy of the Seventh Circuit has stated when analyzing a third party beneficiary issue: "there is an important difference between *knowledge* that a certain outcome will occur and an *intent* to bring about that result. In order to establish third party beneficiary status, a plaintiff must show more than that the contracting parties acted against a backdrop of knowledge that the plaintiff would derive benefit from the agreement. The plaintiff must show that the benefit to the plaintiff was a consequence which the parties affirmatively sought; in other words, the benefit to plaintiff must have been, to some extent, a motivating factor in the parties' decision to enter into the contract." *Corrugated Paper Products v. Longview Fiber Co.,* 868 F.2d 908 (Seventh Circuit 1989). (emphasis added)

The same distinction exists between knowledge and intent in the instant case. Obviously LRK knew that the authority would benefit from its contract with GDF. However, there is nothing in the 1985 agreement or the surrounding circumstances to indicate that either LRK or GDF intended to confer third party beneficiary status upon the authority. In fact, their agreement states the opposite so that the threshold test could not be satisfied.

In terms of the 1986 test boring agreement the authority argues (as it did with the 1985 agreement) that since any subcontracts between GDF and subcontractor had to be approved by the authority that both GDF and LRK intended to benefit the authority in the 1986

test boring agreement. The authority also contends that it is clear LRK was performing its obligation to GDF in order to fulfill portions of GDF's obligations to the authority. Again, however, the language of the contracts between GDF and the city authority indicates otherwise. It was clearly the intention of GDF and the city authority in their prime contract that GDF was responsible for performance of the prime contract including those duties delegated to subcontractors. It is equally clear that in the contract between GDF and LRK that there was no intention to pass on GDF's responsibilities when that agreement is read together with the prime contract.

There is no question that the authority stood to benefit from LRK's contracts with GDF. However, that is the case with all construction subcontracts. The owner is always the one who ultimately benefits from the performance. That fact, however, does not generate a genuine issue of material fact given the clear indication of the parties' intentions as set forth in the applicable contracts.

## CONCLUSION

In this case, both parties agree that the executed contracts themselves do not express an intention to benefit the authority. Thus, we cannot find that the *Spires* test was met here and that the plaintiff would be entitled to third party beneficiary status under that test.

Further, the holdings in both the *Guy* and *Scarpitti* cases cause this court to conclude that *compelling* circumstances are needed in order for a court to find that the alternate test (Restatement (Second) of Contracts §302) has been satisfied. See generally, *Scarpitti, supra* at 372-73, 609 A.2d at 150-51. In the case before the court, we find no compelling circumstances in this case which would lead us to conclude that recognition of the authority's right is appropriate to effectuate the intention of GDF and LRK when they entered into their

two subcontract agreements. In fact, the language is so clearly to the contrary that in our opinion no factual issue exists. The authority's remedy in this case, as is the case in most owner/contractor/subcontractor situations, is to sue the prime contractor.

Given our conclusion that the authority cannot maintain a breach of contract action against LRK on a third party beneficiary theory, we need not address the statute of limitations issue which is also before the court. No matter how that issue was determined, the fact remains that since there is no privity of contract between the authority and LRK this action cannot go forward for economic damages. Accordingly, we enter the following order.

## ORDER

And now, May 25, 1995, the above-captioned matter having come before the court on a motion for summary judgment by defendant, L. Robert Kimball and Associates, and the court finding that the plaintiff, the Altoona City Authority, is not a third party beneficiary in this case, it is ordered, directed and decreed that the defendant's motion for summary judgment is granted.