J-A23002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, S/B/M ALLIANCE BANK | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| 7327A WEST CHESTER PIKE, LP; 7329 WEST CHESTER PIKE, LP; 7331 WEST CHESTER PIKE, LP; JAMES P. DUFFY; KATHLEEN M. DUFFY; JOHN F. JOYCE; AND COLLEEN A. ATCHASON JOYCE, | : : : : : : : : : : : : : : | No. 220 EDA 2017 |
| APPEAL OF:  JAMES P. DUFFY JR. AND KATHLEEN M. DUFFY | : : | |

Appeal from the Order Entered December 21, 2016
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  2015-010226

BEFORE:   PANELLA, J., DUBOW, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.            **FILED DECEMBER 12, 2017**

In this case arising from several failed real estate limited partnerships, the Duffy Family Limited Partnership ("DFLP") purchased judgments against the real estate partnerships after they failed. After completing the purchase, DFLP marked the judgments satisfied as to all parties except a limited partner of the real estate partnership, Appellee John Joyce, and his wife,

_____
*   Former Justice specially assigned to the Superior Court.

Colleen Joyce. Both Joyces had guaranteed the real estate limited partnerships' payment of the loan in their individual capacities.

We are asked to determine whether the purchase agreement between DFLP and the judgment seller, Wilmington Savings Fund Society, FSB ("WSFS"), which required WSFS to "satisfy or release the Mortgages recorded by the [WSFS] … and to satisfy the Judgments," required WSFS to satisfy the judgments against the Joyces in their individual capacities. After careful review, we conclude that the Duffys lacked standing to prosecute this matter in their individual capacities, and therefore affirm. In any event, we further conclude that the purchase agreement required WSFS to mark all the judgments as satisfied.

The record reveals the following background to this action.[1] James Duffy formed several limited partnerships with John Joyce to purchase and manage commercial real estate located in Upper Darby, Pennsylvania. They both joined as limited partners, with Irwin Holdings Company as the general partner.[2] James Duffy was the president of Irwin Holdings Company.

_____

[1] This summary is taken from the overview provided by the Joyces' counsel at the hearing in this matter. **See** N.T., 9/6/16, at 5-10. The Duffys' counsel did not dispute any of the overview. **See id**., at 10.

[2] Limited partners are, absent extraordinary circumstances, partners whose liability is limited to their investment in the partnership. **See Freedman v. Tax Review Board of City of Philadelphia**, 243 A.2d 130, 134 (Pa. Super. 1968). General partners are fully liable for the debts of the partnership. **See Holt's Cigar Company v. 222 Liberty Associates**, 591 A.2d 743, 744
*(Footnote Continued Next Page)*

In conjunction with the purchase and renovation of the commercial properties, the limited partnerships borrowed $473,000 from Alliance Bank. Alliance Bank later merged with WSFS. Both Joyce and Duffy, as well as their respective wives, personally guaranteed the limited partnerships' repayment of the loans.

Ultimately, the limited partnerships defaulted on the loans, and WSFS entered confessed judgments against the limited partnerships, the Joyces, and the Duffys. WSFS later transferred this judgment to Cumberland County in an effort to enforce the judgments against a home owned by the Joyces there. Shortly thereafter, DFLP purchased WSFS's rights under the judgments. James Duffy is the general partner of DFLP.

As noted above, the sale agreement provided that WSFS would "satisfy or release the Mortgages recorded by [WSFS] … and to satisfy the Judgments." Counsel for WSFS subsequently drafted a praecipe to satisfy the judgments against all defendants, including the Joyces. This praecipe was never recorded. Instead, after closing on the sale, counsel for the Duffys filed a praecipe to have all the judgments, save those against the Joyces in their individual capacity, marked satisfied.

The Joyces subsequently filed the instant petition to compel WSFS to have the remaining judgments against them marked satisfied. The court

*(Footnote Continued)* ─────────────

(Pa. Super. 1991). It is not clear what type of business entity Irwin Holdings Company was at the relevant times.

scheduled a hearing on the petition, but no testimony was taken. The Joyces argued they were intended third party beneficiaries of the purchase agreement. The Duffys asserted the purchase agreement clearly evinced an intent by DFLP to pursue collection on the judgments against the Joyces. Counsel for WSFS ably summarized its position in the matter:

> [I]t really boils down to this: WSFS has no real dog in this fight at this point. We've sold the loan, the loan documents, the judgments to [DFLP.] At closing, typically when a loan sale is done, whenever there's litigation – I've probably done 50 or 60 of these, and whenever there's active litigation, which there often is in the case of a distressed loan, we'll say as the Bank, okay, we'll either terminate the litigation or we'll assign it to you, buyer, whoever you are. Those are the options. *Here, the Loan Sale Agreement says what it says. It says satisfy the judgments. WSFS's former counsel delivered a satisfaction judgment, satisfaction to the title company. That isn't ultimately what was recorded.* But if the judgment was not going to be satisfied, and at the end of the day we have absolutely – I take no position, WSFS takes no position on the arguments that are being made in the petition because these are no longer our judgments. Whether they were satisfied or not, they no longer belong to the Bank, they belong to [DFLP.] The Bank will take whatever action it is your Honor directs. … [W]hile we're still the nominal Plaintiff in this action, we have no further interest in it, … this is really a partnership dispute at its heart.

N.T., 9/6/16, at 33-35 (emphasis supplied).

The court held the Joyces were intended third party beneficiaries, and therefore ordered WSFS to mark the remaining judgments satisfied. The Duffys filed this timely appeal. WSFS did not file an appeal.[3]

_____

[3] The Joyces argue the Duffys do not have standing to pursue this appeal, as they are not an aggrieved party under Pa.R.A.P. 501. They contend the
*(Footnote Continued Next Page)*

- 4 -

We conclude, *sua sponte*, that the Duffys had no standing to pursue this matter in their individual capacities. DFLP is a limited partnership, with a separate identity from the Duffys. As such, they had no standing to pursue the litigation on behalf of DFLP.

Even if we were to address the Duffys' appeal on the merits, we would affirm. The Duffys raise three challenges to the trial court's order. First, they argue the court erred in finding the judgments in Cumberland County were entered solely against the Joyces. Our review of the court's opinion on appeal reveals this interpretation to be flawed.

In its discussion of the dispute, the court noted "the Cumberland County judgments … only *affected* Mr. and Mrs. Joyce." (emphasis supplied). This is not a finding that the judgments were entered only against the Joyces, but rather, an observation of the undisputed fact that only the Joyces had property in Cumberland County subject to collection on the judgment. In any event, as we demonstrate in our discussion of the Duffys' third issue on appeal, the effect of the Cumberland County judgment is irrelevant to the question of whether the Joyces were intended third party beneficiaries of the purchase agreement.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

Duffys have suffered no adverse consequences, as the order merely directs WSFS to take action, not the Duffys. If we were to reach this issue, we would conclude that WSFS was not an aggrieved party, as it took no position on the resolution of this matter. DFLP was aggrieved by the trial court's order, as it contended that the court misapplied the contract between DFLP and WSFS.

In their second issue on appeal, the Duffys argue the court improperly decided disputed issues of fact despite the Joyces' failure to present any evidence at the hearing. Specifically, the Duffys contend "the Joyces failed to proffer any evidence during the hearing regarding the circumstances of the negotiations or the nature and scope of the fiduciary duty purportedly owed to Mr. Joyce." Appellant's Brief, at 18. Once again, we conclude this issue is irrelevant to the ultimate issue in this case: the interpretation and construction of the purchase agreement.

We therefore turn to the Duffys' third and final issue on appeal. The Duffys argue the court erred in concluding the Joyces were intended third party beneficiaries of the purchase agreement. Contract interpretation is a question of law; therefore, this Court is not bound by the trial court's interpretation. **See Kraisinger v. Kraisinger**, 928 A.2d 333, 339 (Pa. Super. 2007). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." **Charles D. Stein Revocable Trust v. General Felt Industries, Inc.**, 749 A.2d 978, 980 (Pa. Super. 2000) (citation omitted).

> In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.

> When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepting meaning of the language used.

*In re Jerome Markowitz Trust*, 71 A.3d 289, 301 (Pa. Super. 2013) (citation omitted).

The Duffys contend the court erred in applying the dictates of *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983). In *Guy*, the Supreme Court held that in the absence of explicit language in the contract, a party can be found to be an intentional third party beneficiary if she satisfies a two-part test:

> (1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.*, at 751 (internal quotation marks omitted).

However, we need not apply *Guy* to determine that the Joyces were intended third party beneficiaries, as the plain language of the purchase contract compels this result. As noted above, the operative language in the purchase agreement requires WSFS to "satisfy or release the Mortgages recorded by the Bank against the Property on November 5, 2009, and *to*

*satisfy the Judgments*." Loan Sale Agreement, 3/3/16, at 2 (emphasis supplied). The second whereas clause of the agreement defines "the Judgments" as "[j]udgments entered by confession in the Courts of Common Pleas of Delaware County and Cumberland County." Paragraph 1 defines the assets purchased by DFLP as, among others, "the Judgments[.]"

We can locate no attempt in the purchase agreement to distinguish the judgments against the Joyces from the other five judgments entered by WSFS by confession. As a result, there are only two possible constructions of the purchase agreement.

First, that "the Judgments" consistently refers to all seven judgments, including those against the Joyces. Under this construction, DFLP purchased all seven judgments. Similarly, use of the term "the Judgments" in the clause requiring WSFS to mark the judgments satisfied would require all seven judgments to be marked satisfied.

This interpretation is the most reasonable and natural interpretation of the term "the Judgments," as evinced by the conduct of the parties. WSFS prepared a satisfaction piece that included all seven judgments. Furthermore, DFLP clearly believes that it has purchased all seven judgments, even if it wishes that a different term had been used to distinguish the judgments against the Joyces.

In the alternative, if we were to interpret "the Judgments" to not include the judgments against the Joyces, we would be forced to conclude

that DFLP did not purchase those same judgments. This would be an irrational construction of the purchase agreement, and clearly does not conform to the conduct of either WSFS or DFLP, the parties to the agreement.

Under these circumstances, there is no need to apply *Guy*. The best evidence of intent is the written contract, and the explicit language of the purchase agreement reveals an intent to have all seven judgments marked satisfied. We cannot presume this language was chosen carelessly, and therefore affirm the trial court's order.

In sum, we conclude that the Duffys had no standing to pursue this matter. Furthermore, even if we reached the substance of the Duffys' appeal, we would affirm.

Order affirmed.

Justice Fitzgerald joins in the memorandum.

Judge Dubow files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2017

- 9 -