Re: Appeal of Marple Newtown : 
School District from the Determination : 
of the Board of Assessment Appeals of : 
Delaware County, Pennsylvania : 
Regarding Date of Breach of Covenant : 
Relating to the Properties Located at the :   No. 506 C.D. 2018
Intersection of Route 252 and Goshen :   ARGUED: March 14, 2019
Road, Newtown Township, County of : 
Delaware, Pennsylvania Owned by : 
Ashford Land Company, LP : 
                               : 
Appeal of: Ashford Land Company, LP : 


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge (P.)
                 HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED: April 15, 2019

      Ashford Land Company, LP (Ashford) appeals from the April 4, 2018 order of the Court of Common Pleas of Delaware County (Trial Court) which overruled a determination of the Delaware County (County) Board of Assessment Appeals (BOAA) that Ashford breached its Act 515[1] Open Spaces Covenant (Covenant) on October 26, 2012, the date upon which Ashford submitted a development plan with the County Recorder of Deeds for purposes of subdividing four pieces of real

---

[1] Act of January 13, 1966, P.L. 1292, *as amended*, 16 P.S. §§ 11941 – 11947. Act 515, colloquially known as the Clean and Green Act, permits counties to covenant with landowners for the preservation of land in farm, forest, water supply, or open space uses in exchange for preferential tax treatment.

property (collectively "Properties") that were subject to the Covenant. Following a tax assessment appeal filed by Marple Newtown School District (District),[2] the Trial Court determined that Ashford breached the Covenant on April 7, 2010, the date Ashford purchased the Properties. After careful review, we affirm with the modification addressed below.

## Background

The relevant facts are not in dispute and the sole point of contention between the District and Ashford is the date upon which Ashford breached the Covenant.

Section 3 of Act 515 permits counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land. 16 P.S. § 11943. The owner of land subject to such a covenant is granted a reduced real estate tax assessment that reflects the restrictions of the covenant. *Id.* Section 6(a) of Act 515 provides that a covenant is breached if the use of the land subject to the covenant is altered to any other use than that designated in the covenant. 16 P.S. § 11946(a). As penalty for breach of the covenant, Section 6(a) provides that the landowner must pay to the county liquidated damages in the form of rollback taxes. *Id.* These rollback taxes are calculated as the difference between the amount of taxes paid under the covenant and the amount of taxes that would have been paid in its absence, plus interest. *Id.* Rollback taxes are assessed for each year of the covenant up through the date of its breach or for the five years prior to the date of the breach, whichever period is shorter. *Id.* Section 5 requires that each county establish procedures governing covenants between land owners and counties for the preservation of land in the uses covered by Act 515. 16 P.S. § 11945. To that end,

---

[2] The District is a taxing district as defined in Section 8802 of the Consolidated County Assessment Law (CCAL). 53 Pa.C.S. § 8802. Pursuant to Section 8855, a taxing district has the right to appeal any tax assessment within its jurisdiction. 53 Pa.C.S. § 8855.

the County promulgated the County Covenant Plan for the Preservation of Land in Farm, Forest, Water Supply, or Open Spaces (County Plan).

The purpose of the County Plan is set forth in Article I, as follows:

> In order to preserve environmentally sensitive areas of cultural, recreational, and historic value, and in order to promote orderly growth, [Act 515] enables [the County] to covenant with landowners to retain land in low intensity uses: farm, forest, water supply, or open space uses.

Reproduced Record (R.R.) at 32a.

The Properties are located in Newtown Township (Township), Delaware County, Pennsylvania. R.R. at 10a. On November 25, 1977, John E. du Pont (then-owner of the Properties) and the County executed a Covenant pursuant to Act 515. R.R at 10a-19a. The provisions of the Covenant granted the Properties preferential tax treatment so long as the Properties were used as farmland. *Id*. at 11a. Farm land is defined in Article II, Section 1 of the County Plan as "[a]ny tract or tracts of land in common ownership of at least twenty (20) acres in area, used for the raising of livestock or the growing of crops." *Id*. at 33a. Paragraph 3 of the Covenant requires the BOAA to fix the real property assessments of the Properties, taking into consideration the restrictions upon the land. *Id.* at 11a.

Du Pont further agreed he would "not commit any act whereby the [Properties] or any part thereof would be used in a manner inconsistent with the [County Plan] and/or whereby the [Properties] would become ineligible for open space covenanting with the County under said [County Plan], and in particular under Article III, 'Lands Ineligible for Covenants' thereof." *Id.* at 10a. Additionally, alteration of the use of the land "to any use other than as covenanted," or any other breach of the covenants or agreements set forth in the Covenant constitutes a breach thereof. *Id.* at 11a.

3

Pertinently, Article III, Section 3 of the County Plan provides that any tract of land which is subject to a subdivision or development proposal within five years prior to application for preferential tax treatment is ineligible for open space covenanting. *Id.* at 36a. A subdivision or development proposal may be evidenced by final approval of a subdivision or land development plan. *Id.* Lands which owner contemplated development within one year prior to application for preferential tax treatment are likewise ineligible for open space covenanting under Article III, Section 4 of the County Plan. *Id.* at 37a. Such development may be evidenced by negotiations, discussion, or request for consideration with a municipal planning commission. *Id.*

Paragraph 7 of the Covenant provides that any citizen of the County or any taxing district within which the Properties are located may notify the County of an alleged breach of the Covenant. R.R. at 13a-14a. In the event of a breach, the County shall give written notice to the landowner that the Covenant is terminated, with liquidated damages imposed accordingly. *Id.* at 14a. The landowner may appeal to the BOAA, which may take testimony and receive evidence concerning the breach, as well as make any independent investigation as it deems appropriate. *Id.* The BOAA is not bound by formal rules of evidence and the decision of the BOAA concerning the breach "shall be final from which no appeal may be taken." *Id.*

Negotiations for a sale of the Properties by du Pont to Ashford began in 1998-99. Notes of Testimony (N.T.), 8/8/17, at 10. On November 21, 2007, Ashford filed a subdivision and land development plan with the Township Board of Supervisors. R.R. at 879a. On April 4, 2008, Ashford entered into an agreement of sale to purchase the Properties from du Pont. R.R. at 569a. Paragraph 13.1.2 of the sales

4

agreement provided notice that the Properties were subject to the Covenant, which would be breached or terminated "[a]t or prior to closing," unless Ashford requested otherwise in writing. *Id.* at 589a. Payment of rollback taxes from the period beginning January 1, 2007, and thereafter, would be shared by the parties. *Id.*

A supplemental sales agreement was executed between du Pont and Ashford on March 25, 2010. R.R. at 788a. Paragraph 1(f) of the supplemental sales agreement specified that the Properties were conveyed subject to the Covenant and Ashford would be solely responsible for payment of any rollback taxes resulting from a breach of the Covenant. *Id.* at 789a. Deed to the Properties transferred from du Pont to Ashford on April 7, 2010. *Id.* at 799a. Ashford's November 21, 2007 subdivision and land development plan was revised October 15, 2010 and conditionally approved by the Township on July 11, 2011. *Id.* at 879a, 886a.

On October 26, 2012, Ashford filed its final subdivision and land development plan for the Properties with the County Recorder of Deeds. R.R. at 834a. Ashford conveyed portions of the Properties to the Liseter Community Association on March 27, 2013. *Id.* at 814a. By letter dated October 15, 2013, the District notified the County that it believed the Covenant had been breached. *Id*. at 40a. The District requested that the County initiate the procedures set forth in Paragraph 7 of the Covenant, relating to breach of the Covenant. *Id.* In a subsequent letter dated November 12, 2013, the District asserted its position that the Covenant was breached no later than April 7, 2010, the date Ashford acquired title to the Properties. *Id.* at 43a.

In a letter dated February 5, 2014, the BOAA notified Ashford that the Covenant was breached when Ashford recorded a "planned development" for the Properties. R.R. at 53a. As a consequence, the preferential tax assessment granted

the Properties was removed and rollback taxes in the amount of $436,672.28 were owed. *Id.* The February 5, 2014, letter did not specify the date upon which the breach occurred, however it noted that a "standard assessment" was imposed on the Properties for the 2013 tax year. *Id.*

The District appealed the BOAA's assessment to the Trial Court, which issued an order on June 29, 2015, remanding the matter to the BOAA to take additional evidence and determine if, and when, the Covenant was breached, since that specific information was not provided in the BOAA's February 5, 2014 letter to Ashford. R.R. at 91a. A remand hearing took place on August 21, 2015, at which the parties presented argument but no testimony. BOAA Decision, March 9, 2017, Conclusions of Law Nos. 13-14. No court reporter was present for the August 21, 2015 hearing. BOAA Conclusion of Law No. 14. On August 2, 2016, the BOAA issued a determination that the Covenant was breached on October 26, 2012. *Id.* at 147a. The District appealed this determination to the Trial Court, which ordered a second remand to the BOAA for purposes of preparing findings of fact and conclusions of law to support its determination that the Covenant was breached on October 26, 2012. *Id.* at 431a.

On March 9, 2017, the BOAA issued its findings of fact and conclusions of law. The BOAA noted that the only evidence of a change in the "state" of the Properties was the recording of Ashford's subdivision and land development plan on October 26, 2012. BOAA Conclusion of Law No. 17. In the absence of evidence that the Properties were no longer maintained in the use for which the lands were covenanted, the BOAA concluded the Covenant was breached on October 26, 2012. BOAA Conclusion of Law No. 18.

6

The District appealed to the Trial Court, which conducted a *de novo* non-jury trial on October 13, 2017. Ashford presented the testimony of John Rouse, a developer and prior owner of Ashford who negotiated the purchase of the Properties from du Pont. The parties agreed to enter additional testimony from Mr. Rouse taken by deposition on August 8, 2017, and the deposition testimony of Ashford's corporate designee, Brian Thierrin.

Mr. Rouse testified that Ashford began negotiating a purchase of the Properties from du Pont in 1998 or 1999. N.T., 8/8/17, at 9. Plans to develop the Properties commenced four years later when Mr. Rouse began submitting plans to the township. *Id.* at 16. At the time of Ashford's purchase of the Properties on April 7, 2010, the Properties consisted primarily of farmland. *Id.* at 16. Approximately 6 or 7 barns were located on the Properties along with at least 20 horses. *Id.* The horses were removed from the Properties after Ashford acquired them on April 7, 2010. *Id.* at 25. Prior to Ashford's acquisition of the Properties, there was hay growing on the Properties which was harvested by an unnamed farmer pursuant to an agreement between the farmer and du Pont. *Id.* at 26. After the Properties transferred to Ashford, Mr. Rouse brought in a different farmer to harvest the hay two or three times per year, as it was not possible to survey the Properties "with all the [hay] that was growing." *Id.* at 26, 30. Mr. Rouse could not remember the name of either farmer. *Id.* at 27. Once cut, the hay was removed from the Properties and used as feed for the farmer's cattle. *Id.* at 26-27. No money was exchanged in this arrangement. *Id.* at 27-28. The hay was not planted by Ashford, but rather grew on its own. *Id.* at 27. Mr. Rouse likened it to a lawn or weeds. *Id.*

Mr. Rouse testified that he visited the Properties every day throughout the years 2010-12. N.T., 10/13/17, at 42. On November 26, 2012, Rouse Group sold

7

Ashford to another developer, Toll Brothers. *Id.* at 35. Mr. Rouse continued to visit the property on a weekly basis after Ashford was acquired by Toll Brothers. *Id.* at 42. Demolition of buildings located on the Properties commenced shortly after Toll Brothers settled on the Properties. N.T., 8/8/17, at 19-20. Mr. Rouse testified that hay was last harvested from the Properties at some point after November 2012. N.T., 10/13/17, at 35.

Mr. Rouse identified several aerial photographs taken of the Properties which purported to establish the state of the Properties on various dates. N.T., 10/13/17, Ex. No. 4. A photograph dated September 10, 2012 showed the presence of a main house, several barns and outbuildings, and open space. *Id.* Mr. Rouse testified hay grew in the open space. N.T., 10/13/17, at 32. The open space identified in the September 10, 2012 photograph was still apparent in a photograph dated November 17, 2012, but demolition of the main house had commenced. *Id.*, Ex. No. 4. By February 15, 2013, the grassy areas of the open space were converted to bare ground and several more buildings on the Properties had been demolished. *Id.*

Brian Thierrin, a senior vice president of Toll Brothers, testified by video deposition on July 20, 2017. Mr. Thierrin appeared as Ashford's corporate designee, however, his testimony regarding the condition of the Properties was limited to the fall of 2011 and thereafter, during which Toll Brothers negotiated and finalized its acquisition of Ashford. N.T., 7/20/17, at 30. Mr. Thierrin visited the Properties approximately once a month during that time. *Id.* He noted the presence of "a couple" of horses[3] and farming equipment such as tractors and thatching machines. *Id.* at 31-32. Mr. Thierrin believed straw or hay was harvested from the Properties because "[i]t was there at one time on one visit, and it was gone the next visit." *Id.*

---

[3] This testimony conflicts with that of Mr. Rouse, who stated that the horses were removed from the Properties after Ashford acquired them from du Pont. N.T., 8/8/17, at 25.

8

at 33. He could not identify the specific crop or plant, only that it was cut and removed from the Properties and "not left in clumps." *Id.* at 34. While Mr. Thierrin never saw the farming equipment in operation, he believed it had been used recently. *Id.* at 86.

Mr. Thierrin testified that removal of any livestock and equipment from the Properties was a condition of the agreement by which Toll Brothers acquired Ashford. *Id.* at 40. The Properties were required to be in a condition in which development could begin immediately after the acquisition took place in November 2012. *Id.* at 40-41, 84. As of November 2012, no crops remained on the Properties. *Id.* at 40-41. Site improvements on the Properties began in January 2013. *Id.* at 85.

Mr. Thierrin was not aware of any documents, such as receipts paying an individual to farm the land, that could establish the use of the Properties as farmland from January 1, 2010 onward. *Id.* at 52, 54. He was likewise unable to identify any person who raised livestock or grew crops on the Properties during that time frame. *Id.* at 53, 55. Mr. Thierrin could not testify as to the condition of the Properties, or activities taking place thereon, from April 7, 2010 through fall 2011. *Id.* at 30, 75.

Each party submitted proposed findings of fact for the Trial Court's consideration. Ashford asserted that the District was bound by Paragraph 7 of the Covenant, which provided that the decision of the BOAA was final and not subject to appeal. R.R. at 238a. Alternatively, Ashford argued the District was bound by the provisions of the Covenant as a third-party beneficiary by virtue of its right to notify the County of the Covenant's breach. *Id.* at 239a. Ashford challenged the Trial Court's decision to hold a *de novo* trial on the basis that the record from the BOAA was complete and sufficient for the Trial Court to resolve the matter. *Id.* at 242a. For its part, the District maintained a *de novo* review of the BOAA's decision

was the appropriate standard. *Id.* at 260a. As to the date Ashford violated the Covenant, the District argued that Ashford's actions taken prior to its purchase of the Properties resulted in the breach taking place no later than April 7, 2010, the date upon which ownership of the Properties transferred to Ashford. *Id.* at 271a.

On April 4, 2018, the Trial Court entered an order overruling the BOAA's determination that the Covenant was breached on October 26, 2012, the date upon which Ashford recorded its subdivision and land development plan. R.R. at 434a. The Trial Court determined that the breach took place no later than April 7, 2010, the date upon which the Properties were transferred to Ashford by means of the agreement of sale with du Pont. *Id.* at 435a. Ashford was ordered to remit rollback taxes, plus interest, from April 7, 2005 through the date upon which the Properties ceased being maintained as farmland. *Id.* This appeal followed.

Subsequent to Ashford's filing a notice of appeal with this Court, the Trial Court issued an opinion in support of its April 4, 2018 order, pursuant to Pa.R.A.P. 1925(a). It rejected Ashford's arguments that the District was bound by the provisions of the Covenant, either as a direct party or a third-party beneficiary, as the Covenant contained no such language and Ashford failed to cite legal authority to support its contentions. Trial Ct. Op. at 20. Ashford's argument that a *de novo* trial was inappropriate was likewise dismissed by the Trial Court, as a *de novo* review was necessitated by the absence of a complete record from the BOAA. *Id.* at 22. Finally, the Trial Court opined that sufficient credible evidence was presented that demonstrated the Properties were not maintained as farmland after the April 7, 2010 sale date. *Id.* at 24.

10

## Issues

On appeal,[4] Ashford argues the BOAA's determination that the Covenant was breached on October 26, 2012, the date Ashford recorded its subdivision and land development plan, was final and unappealable, per the express terms of the Covenant. According to Ashford, the District was bound by the Covenant as a third-party beneficiary and its appeal of the BOAA's determination should have been disallowed as the Covenant provides the decision of the BOAA concerning the breach "shall be final from which no appeal may be taken." R.R. at 14a. Ashford further argues the Trial Court erred in conducting a trial *de novo*, and its finding that the Covenant was breached on April 7, 2010 was not supported by substantial evidence.

## Discussion

### A. Third-Party Beneficiary

First, we address whether the District was bound by the terms of the Covenant which provided that a determination of the BOAA was final and not subject to appeal.

While acknowledging that only the County and Ashford are "direct parties" to the Covenant, Ashford argues that the District is also bound by its terms. Ashford's Br. at 18. More particularly, Ashford asserts that the language in Paragraph 7 of the Covenant, which provides "the decision of the [BOAA] shall be final from which no appeal may be taken," applies not merely to prospective appeals by the parties, but to the District as well. Further, Ashford argues the District is a

---

[4] Our scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion or committed an error of law, or whether its decision is supported by substantial evidence. *Westinghouse Elec. Corp. v. Bd. of Prop. Assessment, Appeals, and Review of Allegheny Cty.*, 652 A.2d 1306, 1309 (Pa. 1995).

third-party beneficiary of the Covenant in part because the Covenant grants to the District the right to notify the County of any alleged breach, and because the District benefits from receipt of its portion of the rollback taxes. This right, Ashford argues, binds the District to the express limitations and conditions of the Covenant, including the provision that a determination by the BOAA is a final one from which no appeal may be taken.

The District responds that it has a statutory right to appeal all decisions of the BOAA pursuant to Section 752 of the Local Agency Law,[5] which provides that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 2 Pa.C.S. § 752. Furthermore, Section 8854(a)(1) of the Consolidated County Assessment Law (CCAL)[6] grants a taxing district affected by a decision of a board of assessment appeals the right to appeal to the court of common pleas in accordance with 42 Pa.C.S. § 5571(b)[7] (relating to appeals generally) and local rules of court. 53 Pa.C.S. § 8854(a)(1). The District contends that a provision in the Covenant which restricts the appeal rights of the parties to that Covenant cannot strip the District, a non-party, of its statutory right to appeal a decision of the BOAA.

_____

[5] 2 Pa.C.S. §§ 751-754.

[6] 53 Pa.C.S. §§ 8801-8868.

[7] Section 5571(b) of the Judicial Code provides that an appeal from a tribunal or other government unit to a court must be commenced within 30 days after the entry of the order from which the appeal is taken. 42 Pa.C.S. § 5571(b). Exceptions are made for certain matters not at issue in the present matter.

12

The District also dismisses Ashford's claim that the District qualifies as a third-party beneficiary to the Covenant. The District maintains that taxes are not a benefit conferred on the District by means of the Covenant. Furthermore, the District asserts it does not actually benefit from the Covenant, as it provides Ashford with more favorable tax treatment. The District points out that the Covenant does not express any intention to confer third-party beneficiary status on the District.

We agree with the District that Ashford's argument that the District is bound by the terms of the Covenant lacks merit, as the Covenant is utterly devoid of any language which suggests any person or entity beyond the County and Ashford would be governed by its provisions. To the contrary, Paragraph 7 of the Covenant provides:

> *the then landowner* to whom a [notice of breach] has been sent shall have the right to appeal within thirty (30) days from the mailing of such written notice to the [BOAA] who [sic] shall hear the appeal within thirty (30) days after appeal is made to it, *giving the then landowner and the County* ten (10) days written notice of the time and place of the hearing; the [BOAA] may hear such testimony and receive such evidence concerning the said breach and may make such investigation concerning the same as it deems appropriate, without being bound by formal rules of evidence and *the decision of the [BOAA] concerning such breach will be final from which no appeal may be taken*.

R.R. at 14a (emphasis added).

Under the plain language set forth above, the landowner has the right to appeal the BOAA's notice of breach. The BOAA must hear the appeal within 30 days and provide the landowner and the County written notice of the time and place of the hearing. This provision does not require notification to any other entity or individual. After notification to the landowner and the County, the BOAA is to hear testimony and receive evidence. The resultant decision of the BOAA is "final from

13

which no appeal may be taken." R.R. at 14a. This provision unambiguously applies to the landowner and the County. In the absence of language which expresses an intent to bind anyone but the parties to the Covenant, we cannot read Paragraph 7 of the Covenant as binding the District and restricting its statutory appellate rights.

With regard to the District's status as an intended third-party beneficiary of the Covenant, generally, a contract must express an intention to confer standing on a third-party beneficiary. *McGaffic v. City of New Castle*, 74 A.3d 306, 311 (Pa. Cmwlth. 2013). An exception to the general rule regarding third-party beneficiaries was carved out by our Supreme Court in *Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983), when it adopted Section 302 of the Restatement (Second) of Contracts[8] and established a two-part test for determining whether one is an intended third-party beneficiary.

The first part of the *Guy* test sets forth a standing requirement which leaves discretion with the court to determine whether recognition of third-party beneficiary

---

[8] Section 302 of the Restatement (Second) of Contracts provides:

> (1) Unless otherwise agreed between promisor and promissee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (Am. Law Inst. 1979).

status is appropriate. *Guy*, 459 A.2d at 751. In other words, a third party's right to performance of a contract must be appropriate to effectuate the intentions of the parties to the agreement. The second part defines the two types of claimants who may be intended as third-party beneficiaries. *Id.* If a party satisfies both parts of the test, a claim may be asserted under the contract. *Id. See also Scarpitti v. Weborg,* 609 A.2d 147 (Pa. 1992) (purchasers of lots in residential subdivision, whose construction plans required architect approval, were intended beneficiaries of contract between architect and developer, and thus had cause of action against architect for failing to approve construction plans).

Ashford has not suggested or argued that the District is expressly designated in the Covenant as a third-party beneficiary. Therefore, the District only attains third-party beneficiary status if it meets the two-part test set forth in *Guy*. Under the first part of that test, it must be shown that the District has 1) a right to performance of the Covenant which 2) is appropriate to effectuate the intentions of the parties to the agreement, namely Ashford and the County. Having reviewed the provisions of the Covenant, we cannot discern how the District would have a right to its performance. Following Ashford's logic, the District's right to performance of the Covenant, stems from its right to notify the County of the Covenant's breach. Breach of the Covenant results in its termination. Therefore, the District's right to performance of the Covenant is rooted in its ability to effectuate a termination of the Covenant. A decision to extend third-party beneficiary status to the District on the basis of such facts would border on the absurd. Furthermore, an attempt by the District to enforce the Covenant would fly in the face of reason, given the negative impact the Covenant has on the District's tax revenues. As the District has no right to performance of the Covenant, the first prong in the *Guy* test cannot be met.

15

The Covenant does not express an intention to confer third-party beneficiary status on the District, and the requirements of the *Guy* test are not met by the facts presented here. Therefore, we conclude the Trial Court committed no error when it determined that the District is not a third-party beneficiary of the Covenant.

**B. *De Novo* Trial**

Next, Ashford argues the Trial Court erred in conducting a *de novo* trial. Ashford suggests that the Trial Court's January 10, 2017 remand to the BOAA "to make a full and complete record" precluded the Trial Court from conducting a *de novo* trial on October 13, 2017. Ashford relies on Section 754(b) of the Local Agency Law, which provides that, where a "full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency."[9] 2 Pa.C.S. § 754(b). After a hearing, the court must affirm the adjudication unless it finds a violation of constitutional rights, an error of law, a violation of the rules and regulations of the agency, or the agency's findings of fact are not supported by substantial evidence. *Id.*

Ashford disputes the District's characterization of the present matter as a tax assessment appeal proceeding under Section 8854(a)(1) of CCAL, which provides that an appeal of the BOAA's tax assessment is to be heard by the Trial Court in accordance with Section 5571(b) of the Judicial Code and local rules of court. 53 Pa.C.S. § 8854(a)(1). Ashford asserts the pertinent issue before this Court is not the amount of Ashford's tax assessment, but rather the date upon which Ashford breached the Covenant. Consequently, Ashford maintains that Section 754 of the

---

[9] Ashford acknowledges that, when a full and complete record of the proceedings before the local agency is not made, the Trial Court may hold a hearing *de novo* and take additional evidence. Ashford's Br. at 29.

Local Agency Law governs the appeal in this matter, and the record from the BOAA proceedings was adequate and complete enough to preclude the need for a *de novo* trial.

The District argues a *de novo* trial was appropriate, as the present matter is a tax assessment appeal governed by Section 8854(a)(1) of CCAL. Section 8854(a)(1) provides in part that such an appeal shall be in accordance with local rules of court. Rule * 27(2) of the County Local Rules mandates that, with the exception of zoning appeals, all administrative agency appeals are to be heard *de novo*. District's Br., Ex. A.

We must first note our disagreement with Ashford's interpretation of the Trial Court's January 10, 2017 order as directing a remand for purposes of making a full and complete record.[10] That order pertinently provides:

> AND NOW, this 10th day of January 2017, upon consideration of [Ashford's] request pursuant to 2 [Pa.C.S.] § 754(a) for remand to the local agency for the purpose of making a full and complete record, and the [District's] opposition thereto, it is hereby ORDERED and DECREED that [Ashford's] request will be, and hereby is, GRANTED.
>
> IT IS FURTHER ORDERED and DECREED that these matters will be, and here are REMANDED to the [BOAA] *for the sole purpose of preparing Findings of Fact and Conclusions of Law in support of its determination rendered on August 2, 2016*, that the Act 515 Covenant in

---

[10] Ashford appears to have conflated the Trial Court's January 10, 2017 order with the order issued on June 29, 2015, which did direct the BOAA to "take additional evidence . . . ." R.R. at 91a. However, as noted previously herein, the BOAA did not take additional evidence at the August 21, 2015 hearing. Rather, the BOAA issued its August 2, 2016 determination that the Covenant was breached on October 26, 2012, the recordation date of Ashford's final subdivision and land development plan, after consideration of the arguments of the parties.

17

> regard to the [Properties] was breached on October 26, 2012.

R.R. at 431a (emphasis added).

A plain reading of the Trial Court's order indicates it granted Ashford's request for a remand expressly for the purpose of preparing findings of fact and conclusions of law to support the BOAA's August 2, 2016 decision. It does not direct the BOAA to take additional testimony and evidence.

Even if we accept Ashford's argument that Section 754 of the Local Agency Law, and not Section 8854(a)(1) of CCAL, governed the District's appeal[11] from the BOAA's decision, the first paragraph of Section 754 provides that "[i]n the event a full and complete record of the proceedings before the local agency was not made, the court *may hear the appeal* de novo, or remand the proceedings to the agency for purposes of making a full and complete record or for further disposition in accordance with the order of the court." 2 Pa.C.S. § 754(a) (emphasis added).

A "full and complete record" is defined as "a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions presented." *In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2006), quoting *City of Philadelphia v. Bd. of License and Inspection Review*, 590 A.2d 79, 86 (Pa. Cmwlth. 1991). A record has been deemed incomplete in situations where the record fails to contain a transcript of the proceedings before the local agency or

---

[11] The provisions of the Local Agency Law shall apply to any adjudication which under any existing statute may be appealed to a court of record, *but only to the extent not inconsistent with such statute.* 2 Pa.C.S. § 751(b) (emphasis added). Section 8854(a)(1) of CCAL provides that a tax assessment appeal shall be governed by Section 5571(b) of the Judicial Code and local rules of court. Section 754 of the Local Agency Law, and its restriction on the ability of the Trial Court to hear an agency appeal *de novo,* is inconsistent with Rule * 27(2) of the County Local Rules, which mandates a tax assessment appeal be heard *de novo.*

18

where a party refuses to provide relevant and necessary documentation to the local agency. *Kuziak v. Borough of Danville*, 125 A.3d 470, 475 (Pa. Cmwlth. 2015).

Here, no transcript was made of the August 21, 2015 hearing before the BOAA. The BOAA acknowledged as much in its March 9, 2017 decision which established October 26, 2012 as the date Ashford breached the Covenant. No testimony was presented and no court reporter was available to make a record of the proceeding.[12] BOAA Decision, March 9, 2017, Conclusion of Law No. 14. The BOAA based its findings of fact and conclusions of law solely on the arguments of the parties and took no additional evidence. Consequently, it can hardly be said that the Trial Court was provided a "full and complete record of the proceedings."

As to the second part of Ashford's argument, Ashford is correct that the issue in this case is the date upon which Ashford breached the Covenant. However, it cannot be seriously argued that the present appeal ultimately constitutes anything but an appeal of the amount of Ashford's tax assessment, as the date of breach clearly implicates that amount. Consequently, we find no error in the Trial Court's decision to hold a *de novo* non-jury trial.

## C. Substantial Evidence

Finally, Ashford argues the Trial Court's determination that the breach occurred on April 7, 2010, the date the Properties were acquired from du Pont, is not supported by substantial evidence. While Ashford concedes it was not actively engaged in farming activities on the Properties, Ashford maintains that hay continued to grow on the Properties well beyond the April 7, 2010 date of breach established by the Trial Court. According to Ashford, the presence of hay satisfied

---

[12] The BOAA noted that neither party requested a court reporter be present at the remand hearing. BOAA Decision, March 9, 2017, Conclusion of Law No. 14.

the requirements of the Covenant that the Properties be used for "the growing of crops." Ashford's Br. at 31.

Ashford also suggests that the BOAA incorrectly determined October 26, 2012 as the date upon which the Covenant was breached. Ashland asserts that its recordation of a land use plan on October 26, 2012 did not constitute a breach of the Covenant so long as hay continued to grow on the Properties. The strict language of the County Plan provides that a property is ineligible for open space covenanting if it is the object of subdivision or development proposals within *five years prior* to application for a covenant, or where the landowner contemplated development within *one year prior* to application. Du Pont filed the application for the Covenant in 1977. Ineligibility under the County Plan could only be triggered by actions which took place prior to filing of the application. Therefore, any steps taken by Ashford in anticipation of development which occurred after the application was filed in 1977 could not render the Properties ineligible for open space covenanting and trigger a breach of the Covenant. Ashford concedes that the Covenant was breached on March 27, 2013, when it conveyed portions of the Properties to the Liseter Community Association.

The District responds that the passive act of allowing hay to grow "like weeds" does not constitute the growing of crops such that Ashford should be granted preferential tax treatment. District's Br. at 34. The District maintains that where the Properties were only acquired for the purpose of development, and the hay growing thereon was only cut to assist with surveying the Properties in anticipation of development, the Properties were never used as farmland.

In its 1925(a) opinion, the Trial Court found that Ashford breached the Covenant on April 7, 2010, in part due to Mr. Rouse's testimony that he initiated the

20

development process several years prior to that date. Trial Ct. Op. at 9. The Trial Court relied on Article III, Section 3 of the County Plan, which provides that any tract of land subject to a subdivision or development proposal within five years prior to application for preferential tax treatment is *ineligible* for open space covenanting. R.R. at 34a. Paragraph 2(b) of the Covenant restricts the landowner from committing "any act whereby the [Properties] or any part thereof would be used in a manner inconsistent with the [County Plan] and/or whereby the [Properties] would become ineligible for open space covenanting . . . in particular under Article III, 'Lands Ineligible for Covenants' thereof." *Id.* at 10a. Violation of this provision of the Covenant constitutes a breach thereof. *Id.* at 11a.

The Trial Court determined that Ashford's actions to advance development of the Properties were taken in derogation of the Covenant and the County Plan "from the getgo." Trial Ct. Op. at 23. Consequently, breach of the Covenant occurred "no later than the date of passage of the [Properties] and the Covenant to [Ashford] on April 7, 2010." Trial Ct. Op. at 17. For this reason, the Trial Court determined that rollback taxes should have been levied against Ashford for five years prior to April 7, 2010, the date upon which Ashford purchased the Properties from du Pont. *Id.*

The Trial Court is correct that the provisions of the Covenant explicitly anticipated a breach would occur should the landowner commit any act which would render the Properties ineligible for open space covenanting, or where the Properties were used in a manner inconsistent with the County Plan. Mr. Rouse testified that Ashford initiated the development process several years prior to acquiring the Properties on April 7, 2010. The Trial Court concluded these actions rendered the Properties ineligible for open space covenanting. It must be noted, however, that prior to April 7, 2010, Ashford did not own the Properties. It was not a party to the

21

Covenant or bound by its terms, and therefore could not have breached the Covenant at any time prior to April 7, 2010. As a result, only the actions of Ashford taken after April 7, 2010, and not before, should guide our decision.

In that regard, the record does not support the Trial Court's finding that Ashford breached the Covenant on April 7, 2010. While Ashford clearly intended to develop the Properties at the time of purchase, the original record filed with this Court contains no evidence to suggest Ashford otherwise acted in derogation of the Covenant on that date. Therefore, the Trial Court's finding that the Covenant was breached on April 7, 2010 is not supported by substantial evidence.

For its part, Ashford has essentially argued that, regardless of the steps taken to develop the Properties, so long as hay was harvested from the Properties, it complied with the requirements of the Covenant. We agree Ashford presents a persuasive argument that crops were grown on the Properties. The hay was not simply cut down and left to rot, but rather was removed from the Properties to be used as feed for cattle. Nothing in the County Plan or the Covenant suggests that a specific type of crop must be grown, or that a landowner must take affirmative steps to cultivate a particular crop versus harvesting hay which grew "like weeds." However, Mr. Thierrin provided uncontroverted testimony that, as of November 2012, no crops remained on the Properties. Accordingly, if the harvesting of hay constituted the "growing of crops" under the Covenant, based on the testimony of Mr. Thierrin, it appears the Covenant was breached at least as of November 2012, when that activity ceased.

This conclusion is bolstered by the photographic evidence produced at the October 13, 2017 *de novo* trial. The November 2012 photograph indicates that demolition of the buildings, and development of the Properties, had commenced.

22

Mr. Rouse testified that such activity began after Toll Brothers acquired Ashford on November 26, 2012.

Our conclusion that the Covenant was breached at least as of November 2012 does not end our analysis, however, as Section 2(b) of the Covenant specifically provides that Ashford shall not commit any act where the Properties are used in a manner inconsistent with the County Plan. Violation of this prohibition constitutes a breach of the Covenant. Therefore, we must review whether other steps taken by Ashford to advance development of the Properties were inconsistent with the County Plan, the purpose of which is to preserve environmentally sensitive areas, preserve areas of special public value, and promote orderly growth. R.R. at 32a.

Ashford filed a revised subdivision and land development plan with the Newtown Township (Township) Board of Supervisors on October 15, 2010. *Id.* at 879a. This plan was conditionally approved on July 11, 2011. *Id.* at 886a. Ashford's conduct in filing a subdivision and land development plan is unquestionably a step taken to advance development of the Properties. Development of the Properties is a use inconsistent with the purpose of the County Plan, which in turn is a violation of the Covenant. Consequently, the evidence demonstrates that Ashford breached the Covenant on October 15, 2010 when it filed its revised subdivision and land development plan with the Township.

## Conclusion

The Trial Court correctly concluded the District is neither a party to the Covenant nor is it entitled to third-party beneficiary status. The Trial Court's decision to conduct a *de novo* trial on the issue of Ashford's breach of the Covenant was likewise legally sound.

Substantial evidence exists to support a finding that Ashford breached the Covenant. However, actions taken by Ashford prior to its acquisition of the Properties cannot constitute a breach of the Covenant, as Ashford was not a party to that Covenant or bound by its terms. Simply purchasing the Properties with the intent of developing them cannot constitute a breach, and therefore the Trial Court's finding that the breach occurred on April 7, 2010 is not supported by the evidence. Rather, as evidenced in the record, October 15, 2010, the date upon which Ashford filed its subdivision and development plan with the Township, is the first date upon which Ashford took action to develop the Properties in violation of the Covenant.

Accordingly, we modify the order of the Trial Court to reflect October 15, 2010 as the date upon which Ashford breached the Covenant. In all other respects, we affirm.

ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Re: Appeal of Marple Newtown              :
School District from the Determination     :
of the Board of Assessment Appeals of     :
Delaware County, Pennsylvania             :
Regarding Date of Breach of Covenant      :
Relating to the Properties Located at the  :    No. 506 C.D. 2018
Intersection of Route 252 and Goshen      :
Road, Newtown Township, County of         :
Delaware, Pennsylvania Owned by           :
Ashford Land Company, LP                  :
                                          :
Appeal of: Ashford Land Company, LP  :

## **O R D E R**

AND NOW, this 15th day of April, 2019, the April 4, 2018 order of the Court of Common Pleas of Delaware County is affirmed as modified as set forth in the foregoing opinion.

_____
ELLEN CEISLER, Judge